UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 BIJAN WOODLEY,
D-2 KANEE GOODE,
D-3 JATEESHA TAYLOR,

    Defendant.

Case No. 15-cr-20007
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

---

**OPINION AND ORDER DENYING DEFENDANT KANEE GOODE'S
SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE
AND REQUEST FOR EVIDENTIARY HEARING
BASED ON VIOLATION OF *FRANKS V. DELAWARE* [116]**

---

Defendant Kanee Goode has been charged with one count of carjacking and one count of using a firearm in furtherance of a violent felony for her alleged role in helping co-Defendant Bijan Woodley and an unknown accomplice steal D'Mario Joel's car at gunpoint outside a Detroit restaurant on December 30, 2014. Joel gave police descriptions of the assailants, the car they drove, and the weapons they used. Around 10 days after the incident, after finding Joel's car and corroborating tips suggesting Woodley's and Goode's involvement, Detroit police officers executed a search warrant for a storage unit belonging to co-Defendant Jateesha Taylor, Goode's girlfriend at the time, and recovered a Bushmaster rifle and magazine.

On October 6, 2015, Goode filed a motion to suppress evidence of the firearm. (Dkt. 74.) She argued "the search was conducted in violation of [her] Fourth Amendment rights because the underlying warrant was overbroad and did not provide probable cause to believe that the storage

facility would contain evidence of a crime." (*Id.* at ¶ 5.) The Court denied the motion on January 5, 2016. (Dkt. 108.)

Goode now claims that the affidavit supporting the search warrant had several material omissions, so she seeks to challenge the affidavit's accuracy. (Dkt. 116, Def.'s Mot. to Suppress.) Because Goode has failed to meet her burden to entitle her to a *Franks* hearing, the Court will deny the motion.

## I.

### A.

On January 9, 2015, police obtained a warrant to search a storage unit belonging to Defendant Jateesha Taylor. Among other things, the warrant authorized the police to seize "[a]ny and all firearms." (Dkt. 116, Def's Mot. Ex. A, Search Warrant at 1.) During the search, police found a black Bushmaster rifle with a magazine. (Dkt. 74–4, Warrant Return at 1.)

The affidavit supporting the search warrant, drafted by Detroit police sergeant William Hart, included the following information about the underlying carjacking and subsequent investigation.

At around 2:00 a.m. on December 30, 2014, D'Mario Joel pulled into a Citgo gas station at 7 Mile and Mound Road in Detroit and parked next to a silver Dodge Durango driven by a woman. (Def.'s Mot. Ex. B, Aff. ¶¶ 2–3.) Joel also saw two men as he walked into the gas station, one of whom he later identified as Defendant Bijan Woodley. (*Id.* ¶ 3.)

Joel drove across the street to Lou's Coney Island and waited for an order he had called in. (*Id.*) His friend followed and parked next to him. (*Id.*) The Durango from the gas station pulled into the restaurant's parking as well, and Joel saw that Woodley was armed with an "assault rifle" and the other man with Woodley was armed with a "blue steel automatic." (*Id.*)

The female driver of the Durango stayed in the car with the doors open, while the two men approached Joel as he sat in the driver's seat of his car. (*Id.*)

Woodley's companion pointed his weapon at Joel and demanded Joel to leave his money, jewelry, glasses, and other belongings on the passenger's seat. (*Id.*) Woodley walked to the passenger's side, pointed the assault rifle at Joel, and hit the window with the rifle's barrel. (*Id.*) They ordered Joel out of the car, and the unknown assailant forced him to the ground. (*Id.*) Woodley and the other assailant then drove off in Joel's car, a 2005 Chrysler 300. (*Id.* ¶¶ 2–3.) The Durango followed. (*Id.* ¶ 3.) Joel and his friend saw that the Durango had a handicapped license plate. (*Id.*)

The affidavit further stated that Police found Joel's car later that day using its GPS tracking system. (*Id.* ¶ 4.) It was parked in the backyard at an address on Newport. (*Id.*) They later saw someone they identified as Derek Johnson driving the car, and they arrested him. (*Id.*)

The next day, "information was obtained" that Woodley was involved in the carjacking and that he lived at an Eastlawn address that was only a block over from Newport. (*Id.* ¶ 5.) Police also obtained information that Woodley frequented an address on Jane Street that was also frequented by "the Dodge Durango that was driven by the unknown black female." (*Id.*)

While surveilling the Jane address on December 31, an officer saw a silver Dodge Durango with a handicapped plate. (*Id.* ¶ 6.) That car was registered to Defendant Jateesha Taylor at an address on Riad. (*Id.*) Police looked into the Riad address and found that Defendant Kanee Goode also resided there. (*Id.*) On January 4, 2015, while surveilling that address, two detectives saw Goode drive the Durango. (*Id.* ¶ 8.)

Finally, the affidavit discussed that on January 8, 2015, police executed a search warrant at the Jane address connected to Woodley, Taylor, and Goode. (*Id.* ¶ 9.) They arrested Taylor on

an outstanding warrant and interviewed her. (*Id.*) She said that she and Goode were dating and that both drove the Durango. (*Id*.) Taylor also stated that she owned two weapons: a pink 9mm handgun and a "black in color long gun." (*Id*.) She said the handgun was in the house, but the police did not find it there. (*Id.*) She also said that the long gun was in a storage unit nearby. (*Id.*)

That same day, before the warrant at issue here was executed, a federal grand jury indicted Woodley and Goode for one count of carjacking (18 U.S.C. § 2119) and one count of use of a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)) for their alleged participation in the December 30th carjacking. (Dkt. 1.) A superseding indictment later added additional counts against Woodley for other alleged carjackings and charged Taylor with one count of transferring a firearm to a prohibited person (18 U.S.C. § 922(d)). (Dkt. 23.) The day after the initial indictment, on January 9, 2015, the indictment was unsealed following Goode's arrest. (Dkt. 5.) That day, Wayne County Circuit Judge Craig Strong also signed off on the search warrant at issue here, and the police executed it.

**B.**

Goode previously moved to suppress evidence of the seized Bushmaster on the grounds that the search warrant was overbroad and lacked probable cause. (Dkt. 74, Def.'s Mot. to Suppress.) The crux of her argument was that because Joel had described Woodley's weapon as an AK-47 (generalized as "assault rifle" in Sergeant Hart's affidavit), the warrant should not have authorized a search for "any and all firearms." On January 5, 2016, the Court held a hearing on the motion and denied it. (*See* Dkt. 108.)

In its oral ruling on the motion, the Court indicated that some authority supported Goode's argument that the warrant failed to meet the Fourth Amendment's particularity requirement. *See United States v. Gardner*, 537 F.2d 861, 862 (6th Cir. 1976) (holding that a

warrant failed to meet the particularity requirement because it authorized the seizure of "all firearms and ammunition" though "probable cause existed, if at all, to search solely for a .38 caliber pistol that was allegedly used in an armed robbery and murder").

Nevertheless, the Court found that even if the warrant was technically invalid, the good faith exception under *United States v. Leon*, 468 U.S. 897, 905, 923 (1984), applied. Specifically, the Court found that the affidavit was not "so lacking" in probable cause that it would have been unreasonable for an officer to rely on it. *See United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (describing parameters of the good faith exception). The Court noted that the warrant authorized the search of a specific storage unit and that the affidavit (1) connected Goode to a sliver Dodge Durango with a handicapped plate, which matched Joel's description of the car involved with the carjacking; (2) connected Goode to Woodley, who was identified as one of the assailants; and (3) connected Goode, via Taylor, to a long black gun said to be in the storage unit, and that weapon matched the basic characteristics of one of the guns used in the carjacking.

Now Goode asks for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the veracity of the affidavit underlying the warrant. She also renews her argument that the fruit of the warrant—a Bushmaster rifle and magazine—should be suppressed because the warrant was overbroad.

## II.

An affidavit underlying a search warrant is presumptively valid. *Franks*, 438 U.S. at 171. To challenge an affidavit's veracity, "[a] defendant is entitled to a *Franks* hearing if [s]he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause

finding in the affidavit." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks,* 438 U.S. at 171–72). Regarding the first requirement, the Supreme Court has instructed:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171.

Additional considerations are relevant when, as here, a request for a *Franks* hearing is based on an affidavit's purported omissions. The Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing cases). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (citation omitted).

## III.

### A.

Goode's first two challenges involve alleged discrepancies between Joel's statements to police and Sergeant Hart's statements in the affidavit. At best, these comparisons reveal minor omissions and do not entitle Goode to a *Franks* hearing.

Goode first contests the affidavit's description of the weapon Joel reported to police that he saw Woodley use during the carjacking. Sergeant Hart wrote in the affidavit that Joel

"observed Bijan Woodley armed with an *assault rifle*" and that Woodley "pointed the *assault rifle*" at Joel and hit the window of Joel's car with the "barrel of the *rifle*." (Aff. ¶ 2 (emphasis added).) But a crime report prepared by Detroit police officers on the morning of the carjacking indicates that "Per Dmario Joel" a suspect "was on the passenger side knocking on the window pointing an *AK-47* at [Joel]." (Def.'s Mot Ex. C, Dec. 30th Crime Rep. (emphasis added).) Goode says that because the affidavit "disguis[ed] the fact that the victim described the long gun as an AK-47–and not as an 'assault rifle,' the police gave the very misleading impression that Ms. Taylor's long gun was likely the so-called 'assault rifle' used in the crime." (Def.'s Mot. at 3.)

This argument fails for several reasons. For one, an AK-47 is a type of assault rifle. *See, e.g.*, *Ramos-Cartagena v. United States*, No. CRIM. 97-110-01 JAF, 2014 WL 104952, at *2 (D.P.R. Jan. 9, 2014) (noting court's finding that an "offense was committed while carrying and pointing at least two AK–47 rifles and one AR–15 rifles—both of which were considered assault weapons under the now expired 1994 Federal Assault Weapons Ban."). For another, Goode's quibbling with the affidavit's failure to reference an AK-47 specifically instead of an assault rifle generally ignores the reality that affidavits supporting search warrants are "normally drafted by nonlawyers in the midst and haste of a criminal investigation" and thus must be viewed "in a commonsense and realistic fashion." *See United States v. Ventresca*, 380 U.S. 102, 108 (1965). Indeed, the affidavit here appears to have been drafted in the midst of a rapidly unfolding investigation—including surveillance at several addresses, an interview of Defendant Jateesha Taylor, the execution of a search warrant at her residence, interviews with the victim, presentation of lineups to the victim, the indictment of Defendants Woodley and Goode, and Goode's arrest—all occurring between the early morning hours of the carjacking on December

30, 2014 until the warrant at issue here was executed less than two weeks later on January 9, 2015.

Commonsense thus suggests that the omission of Joel's specific AK-47 reference was the result of haste, not reckless disregard for the truth. But even if Sergeant Hart's use of "assault rifle" instead of AK-47 was intentional, he had good reason to choose the former over the later: not every reviewing judge might know exactly what type of weapon an AK-47 is. Moreover, the police may have rightfully doubted the full accuracy of Joel's description. He had been robbed at gunpoint at night before reporting his description to officers. As the very crime report that Goode relies on indicates, when Joel first reported the details of the incident to the police, he "appeared to be nervous and talking fast." (Dec. 30th Crime Rep.) Thus, this minor inconsistency between what Joel reported to police and what Sergeant Hart wrote in the affidavit comes far from meeting Goode's preliminary showing that Sergeant Hart intentionally, knowingly, or with reckless disregard for the truth, included a material omission in the affidavit. *See Rose*, 714 F.3d at 370.

Even if the Court were to review the affidavit including the omitted "AK-47" description, that would change nothing. Goode's concern is that by describing the weapon as an "assault rifle" instead of "AK-47," it gave Judge Strong the impression that Taylor's long black gun was used in the carjacking. The affidavit would have given rise to that same inference had the AK-47 description been included, as both descriptions—AK-47 and assault rifle—are consistent with a long black gun.

Goode next challenges another slight difference between what Joel apparently told police and what Sergeant Hart wrote in the affidavit. Specifically, the affidavit noted that Joel described a silver Dodge Durango with a handicapped plate and that police connected Goode to a car

matching that description. (Aff. ¶ 3.) Though the affidavit never mentioned the car's year, crime reports did. For instance, the December 30th report noted that while Joel described the vehicle as a silver Dodge Durango with a handicapped plate, he also thought the vehicle was a "possible 2000 or older." (Dec. 30th Crime Rep.) But a subsequent January 5, 2015 report indicated that the silver Dodge Durango with a handicapped plate ultimately connected to Goode was a 2006 model. (Def.'s Mot. Ex. D, Jan. 5th Crime Rep.) According to Goode, had Sergeant Hart "included this information in the warrant affidavit, it may have caused Judge Strong to hesitate in finding a link between the truck described by D'Mario Joel and the Durango connected to Ms. Goode." (Def.'s Mot. at 4.) This is a stretch that does not support a *Franks* hearing.

The substance of Joel's description was that he saw a silver Dodge Durango with a handicapped plate. That was precisely the type of car police connected to Taylor and Goode. True, the 2000 model may be slightly boxier than the 2006 model. (*See* Def.'s Ex. E, Truck Comparisons.) But Joel did not expressly say that he saw a 2000 year or older Durango. He described the car as a *possible* 2000 or older. And, just like with his description of the weapon he saw, he reported the details to police after being robbed at gunpoint, at night, and at a time when he "appeared to be nervous and talking very fast." (Dec. 30th Crime Rep.)

 "Allegations of material omission are held to a higher standard because of the potential for endless rounds of *Franks* hearings due to potentially endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *United States v. Fowler,* 535 F.3d 408, 415 (6th Cir.2008) (internal quotation marks and citations omitted). By bringing forth nothing more than minor discrepancies between the details in police reports and the details in the affidavit supporting the search warrant, Goode calls for nothing more than conjecture about Sergeant Hart's state of mind. She has thus

9

failed to meet her burden to "make[] a substantial preliminary showing that [Sergeant Hart] knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit." *Rose*, 714 F.3d 362, 370,

## B.

Goode next challenges the affidavit for another type of omission: details concerning an informant. She says that the affidavit omitted facts surrounding the reliability of a confidential source who allegedly established three "critical facts" described in the affidavit: (1) Woodley's involvement in the carjacking; (2) Woodley's association with a Jane address; and (3) the Dodge Durango's association with that address. (Def.'s Mot. at 5.) Her main point appears to be that if the informant was Derek Johnson, and the police suspected him of involvement in the crimes when requesting the warrant, their omission of that information (and Johnson's suspected involvement in many other crimes) was deliberately misleading. (*Id.* at 6.) While not acknowledging whether Johnson was the informant, the government does advise that after Johnson was arrested, he told police that he obtained Joel's car from Woodley and that Woodley and Goode were associated with an address on Jane. (Gov.'s Resp. at 2.)

"Indicia of an informant's credibility are certainly important in an affidavit, and the omission of known information regarding credibility can in some cases be misleading enough to be deemed a falsehood under *Franks.*" *United States v. Jones*, 533 Fed. App'x 562, 568 (6th Cir. 2013). On that note, Goode relies on *United States v. Glover*, 755 F.3d 811, 816–17 (7th Cir. 2014). There, an affidavit failed to include any information about an informant's credibility, and the tip was only "minimally corroborated." *Id.* at  816–17. So, among other things, the court reversed the district court's decision to deny a *Franks* hearing. *Id.* at 821.

However, the Sixth Circuit has made clear that "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006). For example, the Court recently reversed a district court's suppression of evidence due to a search warrant affidavit's limited information about a confidential informant's track record, explaining: "[t]he district court's mistake . . . was to think of this case as one where the police conducted a search based on an informant's tip alone. That did not happen here: the warrant was based on [the officer's] own observations more than it was the informant's." *United States v. Jones*, — F.3d —, 2016 WL 1359059, at *4–5 (6th Cir. Apr. 6, 2016).

This rationale applies to requests for *Franks* hearings as well. In *Jones*, 533 F. App'x at 569, the Court affirmed the denial of a *Franks* hearing despite an affidavit's limited information about an informant's credibility because officers "independently verified information provided by the informant." The Court reasoned: "Although the affidavit did not include information on the CI's meth addiction or criminal history, it contained other information suggesting that the information was credible. . . . A simple reading of the affidavit suggests that the officers chose to collect their own information rather than rely on the word of the CI alone and that they had found the CI's statements to be credible." *Id.* at 568–69. The Court also concluded that including omitted information about the informant's criminal history "does not change the fact that the affidavit included a fair amount of confirmed information on [defendant's] drug activity." *Id.* at 569.

The same goes for here. Sergeant Hart's affidavit had a multitude of information corroborating the facts that Goode suggests were solely established by the informant—even

11

assuming it was Johnson. After the informant told police of Woodley's involvement in the carjacking (Aff. ¶ 5), Joel and his friend, both of whom witnessed the carjacking, each identified Woodley in a photo lineup (Aff. ¶ 7). After the informant told police that a Dodge Durango frequented the Jane address (Aff. ¶ 5), police surveilled that address and saw a silver Dodge Durango in the driveway (Aff. ¶ 6). That car's plate led police to Taylor's Riad address (Aff. ¶ 6), where further surveillance enabled police to see Goode driving that same car (Aff. ¶ 8)—one that, consistent with Joel's description, had a handicapped plate. Further information about Johnson's criminal history may have tended to be exculpatory for Goode. But "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). The Court finds that Goode has not made a strong preliminary showing that Sergeant Hart intentionally misled Judge Strong or that the judge was not reasonably assured that the information was credible.

In short, a *Franks* hearing based on an affidavit's omissions is appropriate only in "rare instances." *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001).  This is not one of them. And the Court sees no reason to disturb its existing ruling on whether the fruit of this warrant should be otherwise suppressed.

**IV.**


For the reasons stated, Defendant Kanee Goode's Supplemental Motion to Suppress Evidence and Request for Evidentiary Hearing Based on Violation of *Franks v. Delaware* (Dkt. 116) is DENIED.

SO ORDERED.



s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: April 8, 2016


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 8, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson