UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-1 BIJAN WOODLEY,
D-2 KANEE GOODE,
D-3 JATEESHA TAYLOR,

    Defendants.

Case No. 15-cr-20007
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

**OPINION AND ORDER
DENYING GOODE'S MOTION FOR ADVERSE JURY INSTRUCTION OR OTHER
SANCTION BASED ON SPOLIATION OF VIDEO EVIDENCE [117]**

In the early morning hours of December 30, 2014, D'Mario Joel was carjacked outside a Detroit restaurant. Two assailants with guns drawn surrounded his car while a third participant in a Dodge Durango parked behind him and blocked him in. When police responded, Joel described his assailants based in part on having seen them at a gas station where he had stopped before heading to the restaurant. Several days later, following additional investigation, the police prepared a photo array and presented it to Joel. Joel picked out Defendant Kanee Goode as the driver of the Durango. The Government has charged Goode with aiding and abetting a carjacking and aiding and abetting the use of a firearm in relation to a crime of violence.

Goode has filed a pretrial motion claiming that the Government spoliated evidence. (Dkt. 117, Goode's Mot. for Adv. Inf.) She asserts that, "[u]pon information and belief," three investigating officers went to the gas station where Joel saw the assailants and were told by the station manager, Ali Sabra, that the surveillance equipment was working, that he did not know how to make a copy of the video, that the surveillance system would overwrite video more than

three days old, and that the officers were welcome to come back with someone who knew how to make a copy of the video. (Goode's Mot. ¶¶ 13, 14.) Nonetheless, says Goode, "it appears that . . . no officer ever returned to do so." (*Id.* ¶ 15.) Goode believes that the video "could have" established, among other things, whether she participated in the alleged carjacking. (*Id.* ¶ 16.) Because she has been deprived of the video, Goode asks this Court to instruct the jury that they may infer that it would have shown something unfavorable to the Government's case against her. (Goode's Mot. at 4–5.)

Goode's argument for this adverse jury instruction rests on a number of premises she has not established. For one, she applies the law governing spoliation sanctions used in *civil* litigation in this criminal case without directing the Court to any authority saying that this is appropriate. (*See generally* Goode's Mot. for Adv. Inf.)[1]

Second, Goode cites *Beaven v. United States Dep't of Justice*, 622 F.3d 540 (6th Cir. 2010), and *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), for the proposition that courts can give an adverse inference instruction when the destruction of evidence is merely negligent (as opposed to, say, intentional). (*See* Goode's Mot. at 3.) But Federal Rule of Civil of Procedure 37 was recently amended and "rejects cases such as

---

[1] Notably, to instead show a violation of the Due Process Clause—which is how the Government frames Goode's motion—Goode would have to demonstrate that it was "apparent" to the police officers that the video was exculpatory or, alternatively, that the video was "potentially useful" and the officers acted in "bad faith" in failing to obtain the video. *United States v. Branch*, 537 F.3d 582, 589–90 (6th Cir. 2008). Goode has not made either showing. *See Branch*, 537 F.3d at 590 ("Negligence, even gross negligence, on the part of the government does not constitute bad faith."); *United States v. Drake*, 543 F.3d 1080, 1089–90 (9th Cir. 2008) ("The exculpatory value of an item of evidence is not 'apparent' when the evidence merely '*could have*' exculpated the defendant." (quoting *Arizona v. Youngblood*, 488 U.S. 51, 56 n.* (1988)); *United States v. Matthews*, 373 F. App'x 386, 390 (4th Cir. 2010) ("The mere possibility that lost or destroyed evidence could have exculpated a defendant is not sufficient to satisfy *Trombetta*'s requirement that the exculpatory value be 'apparent' to the police before destruction.").

*Residential Funding* . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. As the advisory committee notes accompanying the amendment explain,

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. Goode provides no reason for this Court to use the standards that courts applied prior to the rule amendment.

But even assuming that Goode could establish these two premises (i.e., that the spoliation-sanction law from civil cases is appropriate in this criminal case, and that under that law, she is entitled to an adverse inference if the Government was negligent in failing to obtain a copy of the video), the Court would still not grant Goode the relief she seeks. This is because she has not established a third premise necessary to her argument: that the Government was negligent.

In response to Goode's motion, the Government has provided an affidavit from Steven Turner, a detective and "video recovery specialist" with the Detroit Police Department. (*See generally* Dkt. 128, Gov.'s Supp. Resp. Ex. A, Turner Aff.) Turner declares that the day after the carjacking he "made contact with an employee at the Citgo gas station and requested a copy of the surveillance video from December 30, 2014 from around 2:00 AM." (Turner Aff. ¶ 5.) In Turner's words, "When I attempted to pull the video from the gas station's surveillance system, I saw that the time on the video system had been deleted and there was no recording of the incident for the time period prior to and during the time the robbery occurred. I was unable to

3

recover video from the gas station on December 31, 2014 for the events of December 30, 2014 because the surveillance video did not exist or had been erased from the surveillance system." (*Id.*) Thus, based on Turner's affidavit, the Government did attempt to obtain the video within the time it would have existed but could not.

Goode has put forth nothing contrary other than counsel's unsupported statement that "[i]t appears that despite the open invitation from Sabra to obtain a copy of the video surveillance, no officer ever returned to do so." (Goode's Mot. ¶ 15.) Given Turner's sworn statements, counsel's speculation does not show negligence.

Accordingly, Goode's Motion for Adverse Jury Instruction or Other Sanction Based on Spoliation of Video Evidence (Dkt. 117) is DENIED.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: April 18, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 18, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson